UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA        )
                                )
          v.                    )        CRIMINAL NO. 04-10010-PBS
                                )
MATTHEW DWINELLS                )


MOTION FOR ATTORNEY-CONDUCTED
VOIR DIRE OF PROSPECTIVE JURORS

          The defendant Matthew Dwinells respectfully moves this court

to allow counsel to conduct the voir dire of prospective jurors

prior to the empanelment of a jury in this case.  The defendant

makes this motion pursuant to Fed. R. Crim. P. 24(a)(1).[1]

Counsel submits that attorney-conducted voir dire using open-

ended questions pertaining to relevant issues in the case will

encourage more candid responses from the veniremen than would

questioning from the bench directly.  Alternatively, counsel

requests a hybrid voir dire where questions are posed to the

panel by the court, followed by questions from counsel as

proposed below.

          Matthew Dwinells is charged with attempted coercion or

enticement of minors to engage in illegal sexual conduct and with

possession and receipt of child pornography.  The government's

evidence in this case will include, among other things,

transcripts of on-line chats between Mr. Dwinells and various law

---

[1]  This motion envisions attorney-conducted voir dire by
government counsel as well.

enforcement officers who posed as teenaged girls during the course of the investigation.  The transcripts are explicitly sexual and contain graphic descriptions of sex acts.  The evidence may also include photographs of child pornography.[2]  The subject matter and evidence in this case are likely to provoke strong emotional reactions from at least some potential jurors, and it is likely that jurors will have strongly held opinions on the subject of sexual relations between adults and minors.

Given the potential for jurors to hold deeply rooted opinions, biases, and prejudices when asked to judge the subject matter of this trial, defense counsel submits that questions during jury selection must allow jurors the chance to ventilate their opinions and feelings to the fullest extent possible.

Counsel is not asking for permission to conduct individual voir dire of prospective jurors.  Instead, counsel requests that she be allowed to question the panel as a group for thirty (30) minutes in order to explore their opinions and feelings by asking open-ended questions that might call for narrative responses from prospective jurors.  Direct questioning by counsel on voir dire is often used in courts of the various States and the District of Columbia.[3]  In addition, some United States District Courts allow

---

[2]  The defense will be moving to exclude pornographic photographs from evidence under F.R.E. 404(b).

[3]  Counsel is speaking from her personal experience. Counsel has tried jury cases in the state of Florida and the District of Columbia; both jurisdictions use attorney-conducted

attorneys to conduct voir dire by open questions to the panel. See Voir Dire Instructions by the Hon. Donald E. O'Brien of the Northern District of Iowa, allowing attorneys 45 minutes of voir dire, attached.[4]  Trial judges sitting in the U.S. District Court for the Southern District of Ohio all allow attorney-conducted voir dire of the venire after initial questioning by the district judge.  See District Judge Trial Procedures at www.ohsd.uscourts.gov.

Counsel is asking to use a method of questioning taught at the Trial Lawyers College.  The Trial Lawyers College is a 3-week long trial skills seminar.[5]  A large part of the seminar is devoted to voir dire examination.  The utility of asking open-ended questions on voir dire is founded on the premise that jurors decide cases by consulting their feelings as well as their intellect.  For attorneys to select jurors who are capable of judging a case fairly, attorneys must have a way to explore jurors' feelings about the issues in a case.  In a case such as this, it is easy to imagine that the panel will contain persons whose emotional revulsion at the allegations and/or the evidence is so deep-seated that they cannot put their feelings aside and

---

voir dire to the panel of prospective jurors.  Counsel has anecdotal knowledge that attorney conducted voir dire is common throughout the southern and western states.

[4]  This document may be found at the website for the U.S. Court for the Northern District of Iowa at www.iand.uscourts.gov.

[5]  Counsel attended the seminar in July, 2004.

judge the evidence fairly.

Counsel does not propose to embarrass the venire by asking inappropriate questions about their sex habits or anything of that nature.  Counsel would want to ask questions along the following lines:

1.  Have you ever had a secret that you didn't want anyone else to know about?

2.  Have you ever had a friend that you didn't want your other friends or parents to know about?

3.  Does it feel satisfying or special to you in any way to have a secret or a secret friendship?  Does it feel worrisome or dangerous to you in any way to have a secret or a secret friendship?

4.  Have you ever had a secret that if a certain person had found out about it, you would have been in serious trouble, not necessarily with the law, but in your personal life?

5.  In this trial you might hear about people who use phony on-line names, nicknames they've given themselves when they go online.  What are your feelings about having an alter ego? Can you imagine a situation where you might want to give yourself an alter ego, or do you think it's always suspicious?

6.  I'm defending Mr. Dwinells in this case.  I'm his lawyer. Sometimes people think that a defense lawyer's job is to get

his client off by using loopholes and technicalities.  I
might put it differently and say that it's a defense
lawyer's job to make sure his client's rights under the law
are protected and that he gets a fair trial.  One of Mr.
Dwinells' rights under the law is to make the prosecution
prove the charges against him beyond a reasonable before he
can be punished for anything they think he's done.  I want
to know whether any of you feel that proof beyond a
reasonable doubt is a loophole or a technicality that gives
a defendant in a criminal case some kind of an unfair
advantage over the prosecutors?

Counsel anticipates that other follow-up questions might be
asked, depending upon the responses given by panel members.

                              Respectfully submitted

                              By his attorney,


                              /s/ Syrie D. Fried
                              Syrie D. Fried
                                 B.B.O. #555815
                              Federal Defender Office
                              408 Atlantic Avenue, 3rd Floor
                              Boston, MA  02110
                              Tel: 617-223-8061

<u>Attachment</u>

## JUDGE O'BRIEN'S VOIR DIRE INSTRUCTIONS

The following are Judge O'Brien's jury selection procedures.

1.      Approximately 25 randomly-selected potential jurors will be notified to appear at the courthouse at 8:30 a.m. on the first day of trial.  About a week before trial, the attorneys will receive from the Clerk of Court a list of the potential jurors, together with copies of their juror questionnaires.  The attorneys also will receive a list of the first 14 potential jurors in the order in which they were randomly drawn.  The court will be provided with a separate list of all of the potential jurors in the order in which they were randomly drawn.

2.      The first 14 preselected potential jurors will be seated in order in the jury box, and will be the potential jurors first considered for impanelment on the jury.

3.      At 9:00 a.m., the Clerk of Court will open court.

4.      Judge O'Brien will greet the jury, counsel, and the parties; announce the name of the case to be tried; and ask counsel if they are ready to proceed.

5.      The Clerk of Court will swear in the entire jury panel.

6.      Judge O'Brien will ask the entire jury panel and ask potential jurors to raise their hands if their answer is in the affirmative.  The attorneys are expected to note who raises their hands and follow up, if they choose, when it is their turn to examine the panel.

7.      Judge O'Brien will ask jurors if they are aware of any circumstance that might prevent their service on the jury, and may excuse anyone for whom he believes jury service would be an undue burden.  The members of the jury panel not already called will be directed to pay attention to the proceedings in the event they are called to replace a potential juror excused for cause.  The lawyers should **REFRAIN** from that sort of inquiry unless the subject is brought up by a juror.

8.      Judge O'Brien will make some brief opening remarks, and will read a statement of the case.

9.      Judge O'Brien will introduce the courtroom staff.  He then will ask the

attorneys for each party to identify themselves, the members of their firm and their clients. The judge will then ask whether any of the potential jurors has had any contact with or has knowledge of any of those persons.

10.    Judge O'Brien will call on counsel for each party to read a list of anticipated witnesses and give a short description of each one. For example, "*John Smith is an accountant, he is about 34 years of age, and he lives in Sioux City.*" Judge O'Brien then will ask whether any of the potential jurors has had any contact with or has knowledge of any of the witnesses.

11.    Judge O'Brien will ask the individual potential jurors to introduce themselves, state where they are from, state where they work, and describe their families. Among other things, Judge O'Brien will inquire into the following:

      a.    Knowledge of this case or any similar case;

      b.    Past jury experience;

      c.    Participation in any lawsuits, whether as a plaintiff or a defendant;

      d.    Experience in matters specifically related to the issues in the case. For example, in a fire accident case: "*Are you a member of a volunteer fire department?*";

      e.    Possible bias and prejudice; and

      f.    Any other matters Judge O'Brien deems pertinent at the moment.

12.    After Judge O'Brien has completed his questions, each side will be permitted to conduct up to 45 minutes of jury voir dire, although much less time usually is sufficient. A request for additional time for attorney voir dire because of the complexity or unusual nature of a case, or in multi-party cases, should be made at the final pretrial conference. **THE ATTORNEYS SHOULD REFRAIN FROM ENGAGING IN CONVERSATIONAL QUESTIONING OF INDIVIDUAL POTENTIAL JURORS CONCERNING INFORMATION THAT IS ALREADY KNOWN.** Attorneys are allowed to question the panel to follow up on the judge's questions and to raise a few additional questions intended to help with the jury selection process, but will not be permitted to pin down potential jurors regarding how they would vote under a certain set of circumstances.

13.    The parties will be permitted to challenge any potential juror for cause. These challenges may be made at the side-bar. If a potential juror is excused for cause, he or she will be replaced by the next potential juror on the jury list, who then will undergo

the same questioning as the other potential jurors.  There will be 14 potential jurors remaining in the jury box at the conclusion of voir dire.

14.    The Clerk of Court will give counsel for the plaintiff(s) a list of the names of the potential jurors.  Counsel for the plaintiff(s) is to draw a line through one of the names, note in the margin, "*Plaintiff's first peremptory challenge*," and then state aloud, "*Exercised.*"  The Clerk of Court then will take the list and hand it to counsel for the defendant(s), who is to draw a line through one of the names, note in the margin, "*Defendant's first peremptory challenge,*" and then announce aloud, "*Exercised.*"  This procedure will be repeated until each side has exercised 3 peremptory challenges and eight jurors remain in the jury box.  While technically these are "challenges," the court will describe them as "strikes" to protect the feelings of the challenged jurors.

15.    The names of the eight remaining jurors will be announced by the Clerk of Court.  Those persons will be placed in the jury box and will constitute the jury in the case.  The rest of the panel will be excused.

16.    The Clerk of Court will swear in the jury.

16.    **THERE ARE NO ALTERNATE JURORS.  ANY VERDICT MUST BE UNANIMOUS.**  During trial, if any of the eight jurors has to be excused from jury service for any reason, the case can be decided by as few as 6 jurors.

17.    Upon stipulation of the parties, if the court approves, the verdict can be less than unanimous or decided by fewer than six jurors, or both.

18.    Upon the request of any party, Judge O'Brien will consider modifying jury selection procedures in a particular case.  Such modifications may include, but are not limited to, a twelve-person jury or an increase in the number of peremptory challenges.