UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA      :
                              :
      v.                      :
                              :      CRIMINAL NUMBER
MATTHEW DWINELLS,             :      04-10010-PBS
                              :
         Defendant            :


           **GOVERNMENT'S RESPONSE TO DEFENDANT'S
              MOTION FOR JUDGMENT OF ACQUITTAL**

**Introduction**

The United States, by its undersigned attorneys, hereby opposes the defendant's Motion for Judgment of Acquittal (the "Motion"). The defendant advances two reasons why, in his view, the evidence presented at trial was insufficient to support the jury's guilty verdict. First, with respect to Counts Two and Three (the "Maria" and "Ashley" counts), the defendant argues that the evidence failed to show that any sex was to occur in Massachusetts. The defendant concedes that the evidence proved he discussed "coming to [Virginia and Ohio] for sexual assignations," Motion at 2, but he argues that the government under §2422(b) was required to prove that the unlawful sexual activity at issue was to have occurred in Massachusetts. Second, the defendant contends with respect to Count One ("Paige"/ "couchchild") that the government failed to adduce sufficient evidence that he took a "substantial step" toward committing the crime of enticement of a minor for illegal sexual purposes.

These claims both fail. First, in the government's view, and under the specific facts of this case, the government was not required to prove that the sexual activity at issue would have occurred in Massachusetts, just that it would have been unlawful had it occurred in Massachusetts. Even if such proof were necessary, the evidence was sufficient because many of the discussions related to sexual activity that was to take place in Massachusetts. Finally, there was sufficient evidence to support the jury's implicit finding that Dwinells took a substantial step toward persuading, inducing or enticing "Paige" to engage in illegal sexual activity.

**Argument**

I.  The Rule 29 Standard

A jury's guilty verdict is entitled to deference and a defendant seeking a judgment of acquittal under Rule 29 thus faces a heavy burden. In evaluating such a motion the Court must determine "whether, after assaying all the evidence in the light most amiable to the government, and taking all reasonable inferences in its favor, a rational fact finder could find, beyond a reasonable doubt, that the prosecution successfully proved the essential elements of the crime." United States v. O'Brien, 14 F.3d 703, 706 (1st Cir.1994). Under this formulation, a court considers all the evidence, direct and circumstantial, and resolves all evidentiary conflicts in favor

of the government. <u>United States v. Moran</u>, 312 F.3d 480 (1st Cir. 2002). Accordingly, as long as the guilty verdict finds support in a "plausible rendition of the record," it must stand. <u>United States v. Ortiz</u>, 966 F.2d 707, 711 (1st Cir.1992).

    II.   <u>The Evidence was Sufficient to Support the Guilty Verdicts on Counts Two and Three.</u>

In finding the defendant guilty on Counts Two and Three, the jury concluded beyond a reasonable doubt that the defendant attempted to persuade "Ashley" and "Maria," respectively, to engage in unlawful sex. The defendant contends that he is entitled to a judgment of acquittal because the government was required under §2422(b) to prove that any unlawful sex that was to have occurred was to occur in Massachusetts and could have been prosecuted there. Because, the defendant contends, the chats with Ashley and Maria concerned sexual acts that were to take place in their home states of Virginia and Ohio rather than in Massachusetts, the evidence was insufficient to support the guilty verdict. This claim fails on the law and the facts. As discussed below, §2422(b) criminalizes the <u>enticement</u> or <u>persuasion</u> or <u>inducement</u> of a minor and, while that conduct almost certainly must occur in the jurisdiction where such conduct occurred, the statute does not require the government to prove that the sexual act that is the supposed goal of the enticement also was to occur in the same jurisdiction. Regardless, the evidence showed that the defendant attempted to

3

persuade Ashley and Maria to engage in unlawful sex in Massachusetts.

    A. Geographic jurisdiction of Massachusetts was not an essential element of 18 U.S.C. §2422(b).

The defendant mistakenly presumes without any elaboration that in the "play within a play" context that emerges in the trial of crimes arising under 18 U.S.C. § 2422(b), the geographical jurisdictional element of Massachusetts law necessarily survives and becomes an essential element of the federal charge. But imposing such a requirement does not comport with the plain language or the purpose of the federal statute.

The internet crosses state and international boundaries and crimes that occur on the internet make those boundaries virtually meaningless; one actor can victimize individuals in any corner of the country or the globe. 18 U.S.C. § 2422(b) addresses one such criminal use of the internet by proscribing its use knowingly to persuade, induce, entice or coerce an individual under eighteen "to engage in . . . any sexual activity for which any person can be charged with a criminal offense." 18 U.S.C. § 2422(b).

In the instant case, proof at trial showed that Dwinells persuaded three undercover victims "Maria," "Paige" and "Ashley," each of whom he understood to be fourteen years old, to engage *inter alia* in sexual intercourse and oral sex. In the United States, an adult male over the age of forty may not engage in these sexual acts with a fourteen year-old girl without running

4

afoul of the law - in any state.[1]  The evidence also showed that

---

[1] Code of Ala. § 13A-6-32 (second degree rape); Code of Ala. § 13A-6-64 (second degree sodomy); Alaska Crim. Code § 11.41.434 (sexual abuse of a minor in the first degree); Az. Rev. Stat. § 13-1405 (sexual conduct with a minor); Ark. Code Ann. § 5-14-110 (sexual indecency with a child); Cal. Penal Code § 261.5 (unlawful sexual intercourse with a minor); Cal. Penal Code § 288 (lewd or lascivious acts involving children); Col. Rev. Stat. § 18-3-405 (sexual assault on a child); Conn. Gen. Stat. § 53a-71 (sexual assault in the second degree); 11 Del. Code § 770 (rape in the fourth degree); D.C. Code § 22-2008 (first degree child sexual abuse); Fl. Stat. § 800.04 (lewd or lascivious offenses committed upon or in the presence of persons less than sixteen years of age); Ga. Code § 16-6-3 (statutory rape); Ga. Code § 16-6-4 (child molestation); 37 Hi. Penal Code § 707-732 (sexual assault in the third degree); Id. Cod § 18-1506 (sexual abuse of a child under the age of sixteen years); 720 ILCS 5/11 - 9.1 (sexual exploitation of a child); In. Code § 35-42-4-9 (sexual misconduct with a minor); Ia. Code Ann. § 709.4 (sexual abuse in the third degree); Kan. Stat. Ann. § 21-3503 (indecent liberties with a child); Ky. Rev. Stat. §510.060 (rape in the third degree); Ky. Rev. Stat § 510.090 (sodomy in the third degree); La. Rev. Stat. § 14:43.3 (oral sexual battery);  La. Rev. Stat. § 14:80 (felony carnal knowledge of a juvenile); 17-A Me. Rev. Stat. § 254 (sexual abuse of minors); Md. Crim. Law Code Ann. § 3-307 (sexual offense in the third degree); 272 Ma. Gen. Law  § 35A (unnatural and lascivious acts with a child); 265 Ma. Gen. Law § 23 (rape and abuse of a child); Mi. Penal Code § 750.520d (criminal sexual conduct in the third degree); Minn. Stat. § 609.342 (criminal sexual conduct in the first degree); Miss. Code Ann. § 97-3-65 (statutory rape); Miss. Code Ann. § 97-3-95 (sexual battery); Mo. Rev. Stat. § 566.034 (statutory rape, second degree);  Mo. Rev. Stat. § 566.064 (statutory sodomy, second degree); Mt. Code. Ann. § 45-5-503 (sexual intercourse without consent); Neb. Rev. Stat. § 28-319 (sexual assault, first degree); Nev. Stat. § 200.364 (statutory sexual seduction); N.H. Rev. Stat. Ann. § 632-A:2 (aggravated felonious sexual assault); N.J. Stat. §  2C: 14-2 (sexual assault); N.M. Stat. Ann. § 30-9-11 (criminal sexual penetration in the fourth degree); N.Y. Penal Code § 130.20 (sexual misconduct); N.C. Gen. Stat. § 14-27.7A (statutory rape or sexual offense against a person who is 13, 14 or 15 years old); N.D. Cent. Code § 12.1-20-03 (gross sexual imposition); Oh. Rev. Code Ann. § 2907.04 (unlawful sexual conduct with a minor); 21 Ok. Stat. § 1114 (rape, second degree); 21 Ok. Stat. § 1123 (lewd or indecent proposals or acts as to child under 16 or person believed to be under 16 – sexual battery); Or. Rev. Stat. § 163.355 (rape in the third degree); Or. Rev. Stat. § 163.385 (sodomy in the third degree); 18 Pa. Con. Stat. § 3122.1 (statutory sexual assault); 18 Pa.. Con. Stat. § 3126 (indecent assault); R.I. Gen. Laws § 11-37-6 (third degree sexual assault); S.C. Code. Ann. § 16-3-655 (criminal sexual conduct with minors); S.D. Code § 22-22-1 (rape, third degree); Tenn. Code. Ann. § 39-13-506 (statutory rape); Tex. Penal Code § 21.11 (indecency with a child); Tex. Penal Code § 22.011 (sexual assault); Ut. Code. Ann. § 76-5-401.1 (sexual abuse of a minor); 13 Vt. Stat. Ann. § 2602 (lewd and lascivious conduct with a child); Va. Code Ann. § 18.2-63 (carnal knowledge of a minor); Rev. Code Wash. § 9A.44.079 (rape of a child in the third degree); W.V. Code § 61-8B-5 (sexual assault in the third degree); Wi. Stat. § 948-02 (second degree sexual assault); Wyo. Stat. § 6-2-304 (sexual assault in the third degree).

the defendant's efforts to convince children to engage in sex and oral sex were futile because he was communicating with adult police officers in Ohio, Virginia, and South Carolina.  In addition, Dwinells never traveled to meet Maria, Paige or Ashley, nor did he follow through on his promises to send money for plane or bus fare when he had offered to do so.  Therefore, the sexual assignations at issue in this case, fortunately, turned out to be entirely hypothetical.  They never were to occur in any location.

Under these unusual factual circumstances, where the defendant had been communicating from his home and workplace in Massachusetts to undercover officers in several different states, where there had been no travel and no actual sexual contacts with a victim, and where the defendant had been discussing sexual activities that were illegal in all fifty states, the government decided to provide notice in the Indictment and First Superseding Indictment of M.G.L. c. 265, § 23, which makes it illegal to engage in sexual intercourse with a child under the age of 16, and of M.G.L. c. 272, § 35A, which makes it illegal to engage in any unnatural and lascivious act with a child under the age of 16.  These were the laws of the defendant's home state, and this notice was included in the Indictment and First Superseding Indictment in order to provide the defense with parameters as to the ***type of illegal sexual activity*** that was contemplated.

This approach comports with Congress's plain language that

persuasion and enticement on the internet is actionable criminally when that persuasion or enticement is directed toward "*any sexual activity for which any person can be charged with a criminal offense.*"  18 U.S.C. § 2422(b).  This broad language does not import into the federal case as an essential element the fact that the defendant could be convicted of a crime under some specific state law.  If Congress had wanted state law boundaries to matter, Congress could have used alternative language such as "sexual activity for which the defendant could be convicted under the law of any state," or the law of the state where the defendant engaged in the enticement, persuasion, inducement or coercion.  Such narrower language would clearly signal that a trial within a trial is required to address whether the activity in question would merit a conviction in a specific state.  The government is urging a broader reading here, one which also comports with Congress's intent to protect the internet, a national and international resource, from sexual predators in every corner of the country, and to provide federal jurisdiction for these crimes that cross state borders.[2]

    To enforce Congress's intent of securing the internet for the nation's children, the government should not have to plead

---

[2] The modern form of 18 U.S.C. § 2422(b) came into being in the Telecommunications Act of 1996.

and prove at trial that the underlying sexual conduct violated the laws of every state.  Should state geographic boundaries seriously come into play in trials under 18 U.S.C. § 2422(b), prosecutors would, as a practical matter, be required to plead every potential state law violation in an effort to stymie potential defenses, even in the case where an individual traveled to a specific location to meet a potential victim.  Were state geography an essential element of this federal charge, a defendant could mount a successful defense by acknowledging that he lived in state X and traveled to state Y to meet the victim, but intended to engage in sexual conduct in a third state, Z.  The ability successfully to raise such defenses virtually defeats federal jurisdiction over internet crime.

    As an alternative argument, when, as here, an attempt crime has been charged in an undercover context and the defendant has not traveled, the court should find that as a matter of law the geographical component of state jurisdiction for the underlying sex crime is satisfied when the law of the defendant's home state is charged in the indictment.  In essence, the fact that the defendant was residing in and communicating from a particular state should provide an adequate basis from which any reasonable jury could conclude beyond a reasonable doubt that the sex crime could occur in the defendant's home state.

    There are no legal precedents that discuss this issue in any

depth. The one federal case that does touch on the issue of the impact of underlying state geographic jurisdiction for violations of 18 U.S.C. § 2422(b) is not contrary to the government's position here. In United States v. Patten, 397 F.3d 1100 (8th Cir. 2005), a resident of Minnesota logged on to a Yahoo! Chat room and enticed an undercover police officer posing as a 16 year-old girl in North Dakota to engage in sex. Id. at 1101. A hotly contested argument erupted at the trial stage of the proceedings because the undercover victim in that case was 16, and consensual sex with a sixteen year-old girl does not violate the law of Minnesota, the defendant's home state, but it does violate the law of North Dakota. Id. at 1103. The defendant lived fifteen minutes from the North Dakota border in Minnesota and insisted that the government needed to prove that the sex act was going to occur in North Dakota. Id. Ultimately the trial judge gave a jury instruction stating that the jury had to find that the sex act needed to occur in North Dakota for the jury to return a guilty verdict and the jury returned a guilty verdict in the case. Id. Patten is so factually distinguishable from the present case as to not be instructive. Unlike the present case, in Patten the sexual act in question was one which was not illegal in every state, in fact it was not even illegal in the defendant's home state. In addition, the defendant in Patten traveled from Minnesota to North Dakota. Finally, defense counsel

9

in <u>Patten</u> proposed a specific jury instruction on the state boundary issue, which was accepted and given by the court.

In sum, based upon the broad language of this statute and Congress's purpose of protecting the telecommunications channels from use by sexual predators, this court should determine that it is not necessary for the government to meet the geographic component of state jurisdiction as an essential element of the 18 U.S.C. § 2422(b) crime. In the alternative, this court should hold that in attempt cases such as this one where the underlying sexual conduct at issue is illegal everywhere in the United States, the facts of the defendant's residence in and communications from a particular state is a sufficient basis as a matter of law from which a jury can conclude beyond a reasonable doubt that the law of the defendant's residence could be violated.

> B.  <u>Even if the government needed to prove that the sex crime would have occurred within Massachusetts, the evidence was sufficient to support the jury's guilty verdicts on counts two and three.</u>

The defendant contends that there was no evidence adduced to "show that any sexual activity was to take place in the Commonwealth" regarding Ashley and Maria.[3]  Motion at p. 2.  The defendant is wrong, however; a cursory review of the transcripts of the chats shows that the defendant at different times

---

[3]The defendant does not advance this claim with respect to Paige and Count One.

attempted to persuade both Ashley and Maria to engage in oral sex and intercourse with him, in Massachusetts.

With respect to Ashley for example, the defendant, on October 10, 2002, told her that if she sent him a pair of panties, he would "do my part by sending you some money to save to get here." There simply can be no dispute that that statement referred to the defendant sending money to Ashley so she could travel to Massachusetts to see him. The defendant's subsequent exchange with Ashley makes it clear that the purpose of any travel to Massachusetts would be to engage in sexual activity with the 14 year old. The defendant told her that "I refuse to go to jail," and if "I sleep with you it's rape," showing that he wanted to have sex with her but was concerned with the potential legal consequences. And, to be clear, the jury reasonably could have concluded that the defendant, a Massachusetts resident, was referring to the legal consequences of engaging in sexual intercourse with a minor in Massachusetts rather than in Virginia, a state whose statutory rape law laws he would have no reason with which to be familiar.

Further evincing the defendant's attempts to entice Ashley to engage in unlawful sex in Massachusetts, the defendant, after Ashley responded that it would not be rape because she would consent to having sex with him, asked her if she wanted sex, if she wanted a baby girl, and stated that he wanted "a girl that

can handle my sex drive." The defendant also asked her if she liked oral sex, told her he liked "giving," and stated again that he wanted a baby. Given that these statements, unquestionably alluding to intercourse and oral sex, all followed the defendant's offer to send Ashley money to come to Massachusetts, the jury could reasonably have concluded that the potential sex acts the defendant discussed with Ashley were to take place when they met, in Massachusetts.

Similarly, there was ample evidence from which the jury could conclude that the one or more of the sex acts the defendant discussed with Maria were to occur in Massachusetts. Some examples are as follows.

On May 12, 2002, the defendant told Maria that he wished she was with him in Massachusetts, and he told her that "I want you so much," and he asked her if she wanted him to touch her breasts.

On July 1, 2002, the defendant tells Maria that he will "start a clothes drawer in my house for you" and tells Maria that he loves her "so much." He tells her that he does not care about their age difference and states that "I want you to have our baby." He shortly thereafter tells her that "I want you sitting on my lap right now." The jury could reasonably conclude from this exchange that what the defendant was discussing with Maria was the eventual impregnation of Maria in Massachusetts. If

there were any doubt that the defendant was discussing sex that was to take place in Massachusetts, he later in the conversation tells Maria that "I wish you were here," and proceeds to explain in explicit detail all the things that he would do, including kissing her breasts, performing cunnilingus, and engaging in intercourse with her.

On July 3, 2002, the defendant tells Maria that he loves her, that he wants her in "my bed now," that he plans to start her clothes drawer, that he has satin sheets for the bed, and that he'll buy her a "teddy bear for our bed." Again, the jury could reasonably have found that these statements were designed to entice or persuade Maria to engage in sex with the defendant in Massachusetts.

On September 7, 2002, the defendant told Maria early into their conversation that he wanted her "to have our baby" and that "I want you now in my bed." Later during the conversation he again told her "I want you so bad in my bed right now" and that he wanted to "kiss every part of your body."

Finally, on November 11, 2002, the defendant told Maria that the really loved her, that she was "so special" to him, that he wanted her in his arms, and that this was to be "in my bed is that ok?" If there were any doubt that the defendant was attempting to entice Maria into engaging in sexual activity, it was eliminated when Maria responded affirmatively and the

13

defendant said, "making love all night?"  And When Maria answered, "mmmmmmmmmmm," the defendant asked "do you want to make a video tape of us making love?"  Surely the jury could have found from this excerpt that the defendant was trying to persuade Maria to engage in intercourse and lewd behavior with him in Massachusetts.

In short, even if it was necessary for the government to prove that the defendant attempted to entice Ashley and Maria into engaging in unlawful sex in Massachusetts, the evidence amply supported such a finding and therefore should not be disturbed.

### III.  Sufficient Evidence was Adduced at Trial to Support the Jury's Finding that Dwinells Took a Substantial Step Toward Enticing "Paige."

The defendant argues in the Motion that mere words alone in an online chat transcript should never be an adequate basis from which a jury could conclude that a defendant took a substantial step toward persuading a minor to engage in illegal sexual activity.  This argument is fundamentally flawed.  The law acknowledges that words can have a powerful effect and the courts have concluded over and over again that in the context of 18 U.S.C. § 2422(b) chat transcripts alone can prove the government's case.  <u>United States v. Thomas</u>, 410 F.3d 1235, 1246 (10th Cir. 2005) ("Thomas took a substantial step in an attempt to induce, entice and persuade by writing and sending his

insistent messages."); <u>United States v. Bailey</u>, 228 F.3d 637, 639-40 (6th Cir. 2000).

In this case, the jury received extensive legal instruction on their duties. Not only was the jury instructed on the legal definition of "substantial step," but it also was instructed that mere indecent speech to a minor is not a crime. On the substantial step, they were instructed that "[a] substantial step is an act in furtherance of the criminal scheme. A substantial step must be something more than mere preparation, but less than the last act necessary before the substantive crime is completed." Jury Instruction No. 23. In addition, the jury also received an instruction that made it clear that "[i]t is not a crime knowingly to address indecent speech to a minor. . . . [y]ou may use evidence of his communications to the extent you find that evidence relevant to proving the existence of any intent to persuade, induce or entice. But I instruct you that the communications, by themselves, are not a crime." Jury Instruction No. 25.

These instructions more than adequately informed the jury of their legal responsibility; they were not to convict on the sole basis of indecent chat transcripts but, rather, needed to evaluate all of the evidence in the case to determine whether the defendant had taken a substantial step toward persuading "Paige" to engage in illegal sexual activity. As noted above, the

defendant argues in essence that words alone cannot be enough for criminal liability, but courts have repeatedly rejected this argument based on the recognition that words can have a powerful effect.  Words that incite people to imminent lawless action can be criminalized.  <u>Brandenburg v. Ohio</u>, 395 U.S. 444 (1969); <u>Rice v. Palladin Enterprises, Inc.</u>, 128 F.3d 233 (4th Cir. 1997).  Speech proposing an illegal transaction can be prohibited. <u>Village of Hoffman Estates v. The Flipside, Hoffman Estates, Inc.</u>, 445 U.S. 489 (1982).

In this case the jury was properly instructed, and properly determined that the words directed at Paige were of sufficient force to show a substantial step toward the persuasion of her to engage in unlawful sexual conduct.  The chat transcripts demonstrate numerous promises to visit, and numerous promises to send gifts and money.  Woven with these promises by the defendant were his numerous requests for sexual acts, and his request that Paige create child pornography pictures for him.  On several occasions, the defendant asked Paige if she would have his baby and marry him.  In addition, the defendant gave Paige detailed instructions regarding how to masturbate, and instructed her to masturbate with a brush handle.  Gov't Ex. 12b.  During one chat, they went online to the Victoria's Secret catalog together and Paige picked out a striped bikini that Dwinells offered to buy for her.  Gov't Ex. 12c.  During the chat session on September

16

8, 2002, Gov't Ex. 12f, the defendant went on about how Paige could come up to Boston and stay with him.  During that conversation they went on to the internet together to look at bus schedules and plane schedules.  These features of the chat transcripts, taken individually or together as a package, show more than idle chatter --they unequivocally demonstrate a substantial step toward persuasion.  Dwinells had a pattern of repeating promises to visit, requests for sex, instructions on sex and promises of marriage, and babies and visits that any rational juror would find would be persuasive to a fourteen year-old girl.[4]

In short, the chat transcripts show the defendant's persuasive pattern of promises interspersed with offers of gifts, money and travel designed to have an impact on the developing sexual and romantic interests of adolescent girls.  The jury rightfully found that these words were designed to have the effect to persuade the victims into engaging in illegal sex.

---

[4] With respect to Maria and Ashley, the defendant mentions them only fleetingly in the "substantial step" argument in his Motion. Motion, p. 5. To the extent that the defendant has not waived his arguments regarding them, the chat transcripts alone, in the government's view, provide more than adequate grounds to support the jury's conclusion that Dwinells took a substantial step toward persuading Maria and Ashley to engage in illegal sex. Of course, the government presented other tangible items in support of this showing.  In the case of Maria, the jury heard evidence that Dwinells sent pictures of his penis, face and muscles over the internet. He also sent a gift of a gold necklace.  With respect to Ashley, Dwinells sent a negligee from Victoria's Secret.  These gifts and additional transmissions over the internet more than suffice to support the jury's implicit finding that the defendant took a substantial step towards actual enticement or persuasion.

17

Dwinells does not dispute that he said these words and the jury's sound conclusions must stand.

## CONCLUSION

For the foregoing reasons, the defendant's' Motion for Judgment of Acquittal should be denied in its entirety.

>                            Respectfully Submitted,
>                            MICHAEL J. SULLIVAN
>                            United States Attorney
>
> By:   /s/ DONALD L. CABELL
>                            Asst. United States Attorney
>
>
>                            SARA L. GOTTOVI
>                            Trial Attorney