UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIM. NO. 04-10010-PBS |
| | ) | |
| MATTHEW DWINELLS | ) | |

MEMORANDUM IN AID OF SENTENCING AND MOTION FOR
DEPARTURE OR VARIANCE FROM ADVISORY GUIDELINE RANGE

   The defendant Matthew Dwinells respectfully submits this memorandum in aid of sentencing and moves this Court for a downward departure or variance from the advisory guideline range in this case. The sentencing hearing is set for February 14, 2006.

   This sentencing follows a jury trial. In 2002 and early 2003, Matthew Dwinells had on-line chat relationships with agents posing as 3 teenaged girls; one of these relationships was begun by one of the agents, who contacted Dwinells electronically after Dwinells had terminated a chat relationship with that agent's on-line alter ego. In these chats, Dwinells and the agents talked explicitly about sex and sex acts and discussed having sex together. The agents sent Dwinells photographs of themselves and lingerie. Dwinells sent one agent a gold chain and another a swimsuit. Though the agents tried to lure Dwinells into interstate travel to

1

meet them for sex, travel plans never materialized because, as Dwinells testified, he had no interest in meeting these girls or having sex with them.  At the time of these events, Dwinells was working at Andover Controls, where he was in charge of coordinating the company's shipping and receiving operations.  Dwinells regularly worked 12-hour days, and during this period he was abusing cocaine to keep himself going.  Before trial, Dwinells pled guilty to possession and receipt of child pornography.

Objections to the Guideline Calculations

The defendant incorporates by reference his objections to the guideline calculations found in the presentence report; the objections are reproduced in the addendum to the report. At particular issue are the employment of a cross reference from USSG §2G1.1 to §2A3.2 and an enhancement under §2G2.2(b)(4).  Under traditional guidelines computation principles, facts supporting an enhancement must be shown by at least a preponderance of the evidence.  Even under this low standard, neither the enhancement on the possession and receipt convictions nor the cross reference to §2A3.2 on the enticement convictions are justified.  Regarding the cross reference, the probation department responds to Dwinells' objection that his offense conduct on the enticement counts did not involve any prohibited sexual conduct by saying,

"[t]he Probation Office contends that the cross reference is not solely limited to circumstances involving prohibited sexual contact, but rather encompasses all prohibited sexual conduct . . ." However, the term "prohibited sexual conduct" has a precise meaning within the guidelines. The term is defined at USSG §2A3.1, comment. (n.1) to mean "(A) any sexual activity for which a person can be charged with a criminal offense." The defendant's speech and gift exchanges are not sexual activity and thus do not support use of the cross reference. There has been no evidence introduced from any quarter that Dwinells engaged in any prohibited sexual conduct. It is worth noting that there are many prosecutions under 18 U.S.C. §2422 that involve actual sexual contact; in such cases, use of the cross reference makes sense. This is not such a case, however.

Likewise, there is no factual basis for concluding that Dwinells "engaged in a pattern of activity involving the sexual abuse or exploitation of a minor" as would justify an enhancement under §2G2.2(b)(4). §2G2.2, comment. (n.1) makes clear that "sexual abuse or exploitation" does not include trafficking in material relating to the sexual abuse or exploitation of a minor. For this enhancement to apply, there

3

has to have been actual physical sexual abuse of a minor involved; mere sex talk does not suffice.[1]

More fundamentally, applying the 5-level enhancement in USSG §2G2.2(b)(4) and the cross reference to §2A3.2 would violate Dwinells' rights under the Sixth Amendment to jury findings of proof beyond a reasonable doubt on these sentencing factors.  See  United States v. Booker, ___ U.S. ___, 125 S.Ct. 738 (2005); Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348 (2000); United States v. Akpan, 407 F.3d 360 (5th Cir. 2005)(Sixth Amendment violated where offense level assigned to defendant pursuant to USSG §2F1.1(b)(8)(B) was based on facts neither admitted by the defendant nor found by the jury).  While the government has not expressly conceded that it could not prove that Dwinells intended to have sexual contact with any of his correspondents, it recognized at trial that its evidence on this point was nearly non-existent and argued to this court that Dwinells could be convicted without proof of any such intent.  On these facts, it would seem a clear Sixth Amendment violation to enhance Dwinells' sentence range on the theory that he either engaged in prohibited sexual conduct or that he possessed pornography while he

---

[1] The defense states that during discussions between the parties on the applicable guidelines in September 2004, the government took the position that this enhancement did not apply.

4

engaged "in a pattern of activity involving the exploitation of a minor," as that term is defined in §2G2.2.

Finally, Dwinells objects to the failure to group counts one and two, the counts involving "Paige" and "Ashley." These counts should be grouped as they involved the same "victim," i.e., the same agent played both roles and created the second role of Ashely only after Dwinells broke off communication with Paige. Counsel submits that the adjusted offense level in this case should be 24, with a resulting sentence range of 51 to 63 months under the advisory guidelines.

Matthew Dwinells' Mental Status
and Need for Treatment

Matthew Dwinells has suffered from bi-polar illness for many years; he was first diagnosed with the disease in 1987. He also has near-addictions to cocaine and alcohol. Dr. Carol Ball's report describes Mr. Dwinells as a chronically unhappy man whose depressive cycles seem to predominate.[2] At trial, Mr. Dwinells related how he habitually submerged his depression and unhappiness in overwork and drug use. He used work to mask his depression and maladaptive internet behavior. He described himself as "the Energizer bunny" who kept going and going, and felt that as long as he kept going, which meant

---

[2] Dr. Ball's psychological evaluation of Matthew Dwinells was forwarded to the court and opposing counsel under separate cover.

to him "as long as I can work," there was no problem. At the time of these offenses, Dwinells was not taking Lithium, the drug that had been prescribed in the 1980s for his bi-polar illness. His failure to stay on his medications no doubt contributed to the depression that gave rise to his criminal behavior here. Dr. Ball opines that Mr. Dwinells was medicating his depression with the on-line sex talk, as well as with cocaine and alcohol; very importantly, Dr. Ball's report makes clear that Matthew Dwinells is not sexually interested in children and is not at risk to prey sexually on prepubescent girls.[3] Her recommendations are that he receive treatment and medication for his substance addictions and bi-polar illness. On the issues of sex and adolescent girls, Dr. Ball recommends counseling to educate Mr. Dwinells about the dangers of his behavior and the the emotional harm it can cause to others. However, because Mr. Dwinells does not have a deviant interest in sex with children, treatment that would be prescribed for a pedophile is not appropriate.[4]

---

[3] See Dr. Ball's summary and conclusions.
[4] Adult male sexual interest in teenaged females is not considered sexually deviant, though it may violate social mores.

<u>REASONS FOR DEPARTURE FROM ADVISORY GUIDELINE RANGE</u>

18 U.S.C. §3553(a) directs the court to impose a sentence "sufficient, but not greater than necessary, to comply with the purposes" of sentencing.  In fashioning a sentence, the court must consider, *inter alia*, the history and circumstances of the defendant, the kinds of sentences available, the need for the sentence to reflect the seriousness of the offense and protect the public from future crimes by the defendant, the need to provide the defendant with needed medical treatment or other care in the most effective manner, and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.  When considered in their totality, these considerations militate in favor of a sentence below the advisory guideline range.

Matthew Dwinells was afflicted with a severe mood disorder and substance addiction at the time he committed the offenses for which he is to be sentenced.  Though his illnesses had been previously observed and treated, he was not getting treatment for them in 2001 to early 2003.  Mr. Dwinells had been off his medications for years and only resumed treatment after his arrest in March 2003.  It is appropriate for this court to consider imposing a sentence below the advisory range based on Mr. Dwinells' unusual mental

and emotional condition, which might also be characterized as diminished capacity.  See USSG §§ 5H1.3, 5K2.13.

Mr. Dwinells' acceptance of responsibility on the pornography counts ought to be taken into consideration as well.  His pleas on counts four and five relieved the government of the significant effort of proving the reality of the children and relieved the jury of the horror of having to view such pictures.  As a result, the trial was focused on what was really at issue; time was not wasted litigating factually moot points.

Moreover, Dwinells' conduct on the enticement counts was outside the heartland of offense conduct covered by §2G1.1 because Dwinells' actions were so limited.[5]  Counsel's research of violations of 18 U.S.C. §2422 shows that in many if not most of these cases, defendants actually travel interstate in order to consummate a sex act.  These arrests are often made at a hotel or bus station at the destination city; defendants will often have paraphernalia with them to facilitate the anticipated sex.  Often these cases involve real teenaged sex partners, not just role-playing law enforcement agents.  By contrast, Matthew Dwinells is being punished here largely for talking about having sex, and not

---

[5] This would be especially true if the court adopts the guideline calculations set out in the presentence report.

for wanting to have sex or planning to have sex.  His conduct was outside the heartland of §2G1.1 and a downward departure from the range is warranted.  <u>See</u> USSG Chap. I, Part A, 4(b).

<u>Sentencing Recommendation</u>

Counsel requests this court to impose a sentence in the range of 24 to 30 months' imprisonment.  This sentence is fair and just on the facts of this particular case and takes into account the special characteristics of this particular offender.  The sentence is also compassionate and will allow Mr. Dwinells to receive the treatment he needs for his depression and substance abuse, and to get the educational counseling he needs about the consequences of his sex-related chatting activities.  While this sentence is below the advisory range, this court would be well within the sound exercise of its discretion to impose it on the facts of this case.  Moreover, this sentence is not out of line with sentences that been imposed on similarly situated offenders in this circuit and nationwide. For example, according to statistics gathered by the United States Sentencing Commission, in fiscal year 2000 the median length term of imprisonment for a CHC I offender convicted of crimes in the prostitution/pornography primary offense category was 27 months; in this circuit, the median length prison term for all CHC offenders convicted of this class of offenses was 30

9

months; in fiscal year 2001, the median prison term for CHC I offenders nationwide in this category was 30 months, and in this circuit for all offenders the median term was 36 months; in FY 2002, the figures were 30 months and 28.5 months respectively.[6]  Fiscal years 2001 and 2002 correspond with the times during which Mr. Dwinells committed theses offenses.  Thus a sentence in the range requested would pay heed to the statutory directive in §3553 that unwarranted disparities in the sentences imposed on similarly situated defendants for similar conduct are to be avoided.  As a corollary, there are no aggravating circumstances that have been identified by the government or the Probation Department that would justify the imposition of a harsher than average sentence in this case.

Psychiatric and substance abuse treatment are certainly called for in this case.  Counsel submits that successful treatment of Mr. Dwinells' underlying mood disorder and drug and alcohol problems will reduce the likelihood of recidivism to a negligible risk, since sexual deviance is not an underlying illness here.  Therefore, counsel asks this court to order significant drug treatment, both within the Bureau of Prisons and as part of Mr. Dwinells' supervised release, snd that on release Mr. Dwinells participate in psychological

---

[6] These statistical tables are attached.

counseling and treatment for his bi-polar disease.  Counsel asks that no fine be imposed.

                                    MATTHEW DWINELLS

                                    By his attorney,
                                    /s/ Syrie D. Fried

                                    Syrie D. Fried
                                        B.B.O. # 555815
                                    Federal Defender Office
                                    408 Atlantic Avenue
                                    Boston, MA  02110
                                    Tel: 617-223-8061

<u>CERTIFICATE OF SERVICE</u>

    I Syrie D. Fried do hereby certify that this filing has been served electronically upon the participants identified in the Notice of Electronic Filing ("NEF") in the above-captioned case this 13th day of February, 2006.

                                    /s/  Syrie D. Fried